MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS V. W. D.
MALONE.

Decided February 16, 1910.

**1.—Damages—Overflow—Johnson Grass.**

Where the injury by wrongful flooding of plaintiff's land consisted in impairment of the productiveness of a perennial growth thereon, such as alfalfa, the measure of damages was the difference in the value of the land before and after the injury was inflicted; and so, also, as to its like impairment by the washing upon it and growth thereon of the seeds of Johnson grass.

**2.—Same.**

The allowance of the value of the crop destroyed in a given year and of the depreciation of the value of the land by injury to its future productiveness, was proper, and not a double recovery.

**3.—Same—Johnson Grass—Contributory Negligence—Charge.**

Plaintiff's right to recover for injury to his land and by seeds of Johnson grass maturing on the right of way of defendant railway being established by verdict, the fact that the charge submitting the defense that plaintiff himself permitted such seed to mature on his land referred only to the portion so injured by defendant's acts was not cause for reversal; the evidence disproving such default of plaintiff was the same and required the same verdict as to all parts of his land; and the error, if any, was one of mere omission, unavailable in the absence of a requested instruction.

**4.—Trial—Reading Decisions to Jury.**

Whether counsel should be permitted, in argument, to read to the jury from decided cases, is a matter within the discretion of the trial court, and not ground for reversal unless the discretion is shown to have been abused to appellant's prejudice.

Error from the District Court of Hays County. Tried below before Hon. L. W. Moore.

*Fiset & McClendon*, for plaintiff in error.—The injuries to land caused by the wrongful acts of another, and resulting in the same being infested with Johnson grass and in the killing out of a stand of alfalfa thereupon, are not such permanent injuries to the land itself as would entitle the party injured to a recovery based upon depreciation in the market value of the land for such injuries. Sabine & E. T. Ry. Co. v. Johnson, 65 Texas, 389; Trinity & S. Ry. Co. v. Schofield, 72 Texas, 498; Gulf, C. & S. F. Ry. Co. v. Helsley, 62 Texas, 593; Texas & N. O. Ry. Co. v. Looney, 33 Texas Civ. App., 495; Green v. Taylor & B. Ry. Co., 79 Texas, 606; Texas & P. Ry. Co. v. Bayliss, 62 Texas, 570; Sabine & E. T. Ry. Co. v. Joachimi, 58 Texas, 456.

*Will G. Barber*, for defendant in error.—Where the evidence shows that a perennial plant like alfalfa is destroyed, it is not improper for the court to submit as the measure of plaintiff's recovery, if his pleading supports it, the difference in the market value of the land before and after the destruction of the plant, and if the plant itself and its roots are destroyed, that is an injury to the land, and may be so

treated and recovered for by the plaintiff. See exactly in point: Thompson v. Chicago, B. & Q. Ry. Co., 121 N. W., 447; Morse v. Chicago, B. & Q. Ry. Co., 116 N. W., 859—both cases of alfalfa and injury thereto, and decided by Nebraska court. See also Terre Haute & L. Ry. Co. v. Walsh, 38 N. E., 534; Ft. Worth & N. O. Ry. Co. v. Wallace, 74 Texas, 581; St. Louis, L. M. & S. E. Ry. Co., 95 S. W., 311; Galveston, H. & S. A. Ry. Co. v. Warnecke, 43 Texas Civ. App., 83; Texas & P. Ry. Co. v. Graffeo, 53 Texas Civ. App., 569; Missouri, K. & T. Ry. Co. v. Neiser, 54 Texas Civ. App., 460; Houston & T. C. Ry. Co. v. Smith, 46 S. W., 1046; Hooper v. Smith, 53 S. W., 65; Baker v. Mims, 14 Texas Civ. App., 413; Owens v. Missouri Pac. Ry. Co., 67 Texas, 679; International & G. N. R. Co. v. McIver, 40 S. W., 438; Pacific Exp. Co. v. Lasker Real Est. Co., 81 Texas, 83; Dwight v. Elmira, C. & N. Ry. Co., 132 N. Y., 200, 30 N. E., 398; Bailey v. Chicago, M. & St. P. Ry. Co., 19 L. R. A., 658; Missouri, K. & T. Ry. Co. v. Goode, 7 Texas Civ. App., 245; Doty v. Quincy, O. & K. C. Ry. Co., 116 S. W., 1126; Louisville & N. Ry. Co. v. Kohlruss, 52 S. E., 166; Missouri, K. & T. Ry. Co. v. Lycan, 47 Pac., 526; Atchison, T. & S. F. Ry. Co. v. Geiser, 75 Pac., 68; Missouri, K. & T. Ry. Co. v. Steinberger, 51 Pac., 623; Chase v. New York Central Ry. Co. (N. Y.), 24 Barb., 273; Mitchell v. Billingsley, 17 Ala., 393; Chicago & A. Ry. Co. v. Davis, 74 Ill. App., 595; Baltimore & O. Ry. Co. v. Irwin, 97 Ill. App., 337; Miller v. Kern County, 70 Pac., 549; Texas & P. Ry. Co. v. Gorman, 2 Texas Civ. App., 144.

RICE, ASSOCIATE JUSTICE.—Defendant in error was the owner of a valuable irrigated farm containing 246 acres, lying in the San Marcos Valley, adjacent to the city of San Marcos, through which the railway of plaintiff in error ran, and he claims that the railway was so negligently constructed that it failed to permit the escape of surface water, by reason of which the same was impounded and held by the railway embankment, occasioning both damage to his crops and permanent injury to his land from back water standing thereon; and that plaintiff in error negligently permitted Johnson grass to mature and go to seed upon its right of way, which was scattered over, infesting his lands, thereby injuring the same; and likewise for injury suffered to his crops by depredation of stock, on account of the negligent failure of plaintiff in error to construct and maintain proper and sufficient cattle-guards where the railroad entered his enclosure.

Plaintiff in error replied by general and special exceptions, general denial, and by plea of contributory negligence, that defendant in error, by the construction of irrigating ditches and dikes, etc., had so changed the natural flow of the water and the lay of the land as to thereby prevent the escape of the surface water flowing over his premises, whereby the injury was occasioned.

There was a jury trial, resulting in a verdict and judgment for defendant in error on each of the issues pleaded, from which this writ of error is sued out.

Plaintiff in error urgently insists that the court erred in permitting a recovery on the part of the defendant in error, on account of the alleged permanent injury to his land by reason of the thinning out

and destroying of the stand of alfalfa and the seeding of his land with Johnson grass, and by its first assignment of error urges that the trial court erred in refusing to give its special charge to the jury upon this subject, which is as follows, to wit: "The jury are instructed that, under the pleadings and evidence in this cause and the law applicable thereto, the plaintiff is not entitled to recover in any sum upon his alleged claim for alleged permanent injuries to said land, if any, by reason of Johnson grass or the killing of alfalfa thereupon, and upon said item of plaintiff's suit you will return a verdict for the defendant."

And by its second assignment it contends that the trial court committed error in subdivision 3 of its main charge to the jury in permitting the jury to find in favor of plaintiff for permanent injuries and depreciation in market value of plaintiff's land, by reason of thinning out and injury to alfalfa growing upon twenty acres of said land, because the depreciation in market value of said land was not the measure of plaintiff's damage for said alleged injury; and by its proposition thereunder, in effect, insists that the true measure of damages in such cases is the value of the injured products, and not the difference in the value of the land before and after the overflow.

The third paragraph of the court's main charge to the jury reads as follows: "The statute law of Texas provides that it shall be unlawful for any railway company doing business in this State to permit any Johnson grass to mature or go to seed upon its right of way, and it provides further, that any person owning, leasing or controlling land contiguous to such right of way may recover from such railway company as damages any sum he may have been damaged by reason of such company permitting Johnson grass to mature or go to seed on said right of way, provided only that the person owning, leasing or controlling such lands does not himself permit Johnson grass to mature or go to seed thereupon, and if he does so he shall not be permitted to recover from the railway company. Now, if you find from the evidence in this case that the defendant company did, as alleged by the plaintiff, during the year 1906, and during the year 1907, prior to the sale of the land in question by the Wood National Bank, allow or permit Johnson grass to mature and go to seed upon its right of way, and that such seed were caused by the water to float over and settle upon the said twenty acres of land, and caused to grow and infest same, then plaintiff would be entitled to recover any damage to the land occasioned thereby, provided only he did not himself allow such Johnson grass to mature and to go to seed upon the said land. And if you further find from the evidence that there was certain other land adjacent and contiguous to the said twenty acres of land so owned and controlled by the plaintiff and upon which Johnson grass made seed; that the seed from such other land was carried to and upon the said twenty acres of land by the water; that such seed from such other land were so caused to be carried upon the said twenty acres of land by reason of the defendant obstructing (if it did) the natural flow of the water which carried such seed; and if you further find that such seed from such other land would not have been carried by the water to or upon the said 20 acres of land but for

the acts of the defendant, if any, in obstructing the natural flow of such water and diverting same to and throwing it upon the said twenty acres of land, if it did; and if you further find that in obstructing said natural flow of water, if it did, and in causing same to be diverted to and thrown upon said twenty acres of land, if it did, the defendant was guilty of negligence, and that as the direct and proximate result of such negligence, if any, Johnson grass seed from such other land was thereby caused to be so thrown upon and over the said twenty acres of land, and that same infested and grew upon the said land, and that thereby the said land was depreciated and damaged in its current market value, then defendant would be responsible to plaintiff for said damage. And if you further find that defendant did obstruct the natural flow of the water by its track and roadbed, and that by reason of such obstruction thereof the water was caused to back out over and stand on the growing crops of alfalfa on the said land, and that thereby same were thinned out, and that thereby the land itself, as distinct from the crops, was depreciated in its current market value, then defendant would be responsible to plaintiff for such damages, if any. If you find under the charges next above given you that Johnson grass seed from the defendant's right of way and from such other land have been deposited on the twenty acres of land in question, and that the alfalfa growing thereon has been thinned out and partially destroyed between date of September 11, 1905, and the date of sale of same by said bank, and that under the charges given you above the plaintiff is entitled to recover damages to the land by reason thereof, then the ·measure of such damage would be the difference, if any, between the fair and reasonable market value of said land in the condition in which it was at the time it was sold by the Wood National Bank and what would have been the value at the time but for such act upon the part of the defendant, if any, in causing, if it did, such Johnson grass seed to be deposited on the land, and the said alfalfa to be thinned out or partially destroyed; but you will not consider any injury, if any, occurring prior to September 11, 1905. And if you find for plaintiff any damages upon this branch of the case you may allow him, as a portion thereof, interest at the rate of six percent per annum from the date of the sale of said land by said Wood National Bank to this date. In determining whether said land was itself depreciated in its market value by reason of any thinning out or partially destroying the stand of alfalfa thereon, if you find that same was thinned out or partially destroyed, you are instructed that mere lessening the amount of the crop which was produced during the year 1906 and the year 1907 upon the said land would not authorize a recovery upon this branch of the case as to the alfalfa, unless the thinning out and partially destroying of the alfalfa, if it was done, in addition lessened the then existing market value of the land itself as distinct from the crop of alfalfa which had already been grown and harvested thereon."

Defendant in error, by his counter-proposition, contends that where the evidence shows that a perennial plant like alfalfa is destroyed, it is not improper for the court to submit as the measure of plaintiff's

recovery, if his pleading and the evidence supports it, the difference in the market value of the land before and after the destruction of the plant; and if the plant itself and its roots are destroyed, that is an injury to the land, and may be so treated and recovered for by the plaintiff.

The evidence discloses that defendant in error, prior to the institution of this suit, had twenty acres of land adjacent to the railway planted in alfalfa, upon which there was a good and sufficient stand, and that during the years 1906 and 1907 said crops of alfalfa were destroyed and injured by reason of back-water standing thereon, and that the land itself, separate and apart from the crops, suffered permanent injury in greater amount than that found by the jury; that other portions of the farm during said years were planted in cotton, corn and other products, which were depredated upon by stock on account of the failure on the part of plaintiff in error to construct proper and sufficient cattle-guards where its roadway entered said premises. It is also shown that said tract of land was seriously damaged and injured by reason of Johnson grass, which had been allowed to go to seed upon said railway right of way, and which was carried by said back-water upon defendant in error's premises, as well as Johnson grass seed from a nearby tract of land which, but for the imperfect construction of said railway, would not have been washed thereon. It was alleged and also proven that alfalfa is a perennial crop, and that, unlike wheat, oats or other grain, would continue to grow each season from the original planting, without the necessity of replanting it, unless killed out by water or in some other way, and that it grows each year from the roots; and it was proven that land planted in alfalfa had been known to continue producing for more than twenty years without being replanted; that the land in question had a fine stand of alfalfa on it, much of which had been killed out by the water, until it had reached the point where it would all have to be plowed up; that a whole year would have to be devoted to killing the Johnson grass by plowing it up before it could be re-seeded in alfalfa. It was shown to have been impracticable and impossible to have re-seeded the land in alfalfa without first killing out the Johnson grass, and that no crop could have been made thereon for the succeeding year, and that the value of the land was materially affected by the Johnson grass, which had been washed thereon from the right of way and the adjoining tract, and the thinning out of the alfalfa by the water.

The question, therefore, to be determined is: What, under the pleadings and evidence, was in fact the true measure of damages in this case? Is the defendant in error only entitled to recover the value of the crops injured or destroyed, together with the amount necessary to re-seed and re-plant the land, plus the rental value of the land while idle, as plaintiff in error seems to contend, or is he entitled to the value of the crops so injured or destroyed, together with the difference in the value of the land before and after the overflow? While the authorities, it seems, are not uniform upon this question, yet we believe the better rule is with the weight of authority, which sustains the ruling of the court below.

In the case of Ft. Worth & N. O. Railway v. Wallace, 74 Texas, 581, where a fire had burned over native grass, destroying the same and injuring the turf and grass roots, it was held that the difference in the value of the land before and after the injury was the correct measure as to the injury done to the roots of the grass and turf, Judge Stayton saying: "Such an injury is one in its nature permanent, though it may not be perpetual, and differs from the injury to a growing crop, which does not result in any injury to the land, as distinguished from the crop."

Where timber has been injured or destroyed, it has been held that the true measure of damages is the difference in the value of the land before and after the destruction of the timber. See Missouri, K. & T. Ry. v. Neiser, 54 Texas Civ. App., 460, 118 S. W., 166; International & G. N. Ry. v. McIver, 40 S. W., 438; Missouri, K. & T. Ry. v. Goode, 7 Texas Civ. App., 245, 26 S. W., 441.

In Baker v. Mims, 14 Texas Civ. App., 413, 37 S. W., 190, involving, among other things, the destruction of turf in plaintiff's pasture by reason of the driving of a herd of cattle over the same, it was held by the court that the difference in the market value of the land before and after the trespass was the proper measure of damages.

In Owens v. Missouri Pac. Ry., 67 Texas, 679, the injury complained of was the destruction of the grass in plaintiff's pasture by water standing thereon, and it was there held that the difference in the value before and after the injury was the correct measure of recovery.

Texas & Pac. Ry. v. Gorman, 2 Texas Civ. App., 144, 21 S. W., 158, where injury was done to growing fruit trees, grape vines and blackberry vines by fire, it was held that the better rule with reference to the measure of damages was the difference in the value of the land before and after the injury; but it was suggested that if the appellee was willing to waive that and accept the cash value of his trees, the appellant could not complain. See also Hooper v. Smith, 53 S. W., 65; Texas & P. Ry. v. Graffeo, 53 Texas Civ. App., 569, 118 S. W., 873.

In the case of Wiggins v. St. Louis M. & S. E. Ry., 95 S. W., 311, where, among other questions before the court, one was as to the measure of damages for injuries suffered by the plaintiff to a timothy meadow from fire, in which the roots of the plant were destroyed, it was held by the court that the injury was really to the inheritance, and that the measure of damages for such injury is the difference in the value of the premises before and after the fire.

In Doty v. Quincy, O. & K. C. Ry. Company, 116 S. W., 1126, the same rule was applied, where the injury was to growing fruit trees that had been destroyed, treating the trees as a part of the realty.

In the case of Louisville & N. Ry. v. Kohlruss, 52 S. E., 166, the same rule was held by the Supreme Court of Georgia with reference to the destruction of ornamental trees. And in Missouri, K. & T. Ry. v. Lycan, 47 Pac., 526, the Supreme Court of Kansas applied the same rule in case of the destruction of growing apple trees, grape and blackberry vines. See also Chase v. New York C. Ry., 24 Barb., 273; Galveston, H. & S. A. Ry. v. Warnecke, 43 Texas Civ. App., 83,

95 S. W., 600, in which the destruction of fruit trees and vines was involved, where it was held that if plaintiff sued only for the value of the trees and vines destroyed he could not recover for the injury to the realty, but, upon proper allegations, he would be entitled to recover for the injury to the realty involved in their destruction.

In Dwight v. Elmira, C. & N. Ry., 15 L. R. A., ——; 132 N. Y., 200; 30 N. E., 398, Justice Parker, of the Court of Appeals of New York, held that the measure of damages for the destruction of fruit trees is the difference in the value of the realty before and after the destruction.

For other cases very much in point, see Thompson v. Chicago, B. & Q. Ry., 121 N. W., 447; Morse v. Chicago, B. & Q. Ry., 116 N. W., 859; Terre Haute & L. Ry. v. Walsh, 38 N.E., 534; Miller v. Kern County, 70 Pac., 549, 137 Cal., 516; the first two of which involved permanent injury to land by reason of the destruction of alfalfa crops.

We think alfalfa and other perennial grasses may be likened to our native grasses, and where the roots thereof are destroyed by water, fire or any other agency, that the damage is one to the inheritance, for which the owner is entitled to recover, and therefore conclude that the trial court was correct in submitting that the proper measure of damages in this case was the difference between the value of the land before and after the injury, and, so believing, we overrule these assignments.

The third assignment complains that the trial court committed error in permitting the jury to find for defendant in error the depreciation in the market value of the land by reason of Johnson grass growing thereon, as the result of defendant's permitting grass to go to seed on its right of way, and as a result of Johnson grass seed being washed upon said land by the obstruction of the surface water. We think this, in effect, raises the same question as presented by the first and second assignments, and that the principle involved in each is the same. See Doeppenschmidt v. International & G. N. Ry., 46 Texas Civ. App., 576, 102 S. W., 950; s. c., 120 S. W., 928, where the same measure of damages was applied as here. We therefore overrule this assignment.

The court in subdivision 2 of its charge permitted a finding in defendant in error's favor for injury to the alfalfa crops of 1906 and 1907. It is contended on the part of plaintiff in error that this charge was inconsistent with the item of damage submitted in subdivision 3 of the court's charge with reference to the permanent injury to the land on account of the thinning out of the alfalfa growing thereon, contending that the same permitted a double recovery. We can not agree with this contention, because where the crops of alfalfa are thus destroyed, and also the stand and the roots thereof are permanently affected, the owner would have the right to recover for the damage to the crops, as well as for the permanent injury to the land by reason of the destruction of the plant itself. We therefore overrule the fourth and fifth assignments presenting this question.

We think the criticism of the charge under the sixth assignment is hypercritical.

By the seventh assignment plaintiff in error claims that the court erred in the second sentence of subdivision 3 of its charge hereinbefore quoted, wherein the jury were instructed that if they should believe from the evidence that the railway company, during the years 1906 and 1907, permitted Johnson grass to mature and go to seed upon its right of way, and that such seed were by the water caused to float over and settle upon the twenty acres planted in alfalfa, thereby infesting the same with such grass, then defendant in error would be entitled to recover any damages thereby occasioned to the land, provided only he himself did not allow such Johnson grass to mature and go to seed upon said tract. The vice, as contended by it, in said charge, consisted in its failure to likewise preclude a recovery on the part of defendant in error, in the event the jury should find that he also had permitted Johnson grass to mature and go to seed upon other portions of said farm. This contention is based upon the theory that the evidence was conflicting upon this phase of the case. Defendant in error suggested that if, in fact, he did not permit Johnson grass to mature and go to seed on the twenty acres of land in question, then his right to recover should not be defeated because he may have permitted some to go to seed upon other and remote portions of the farm, because he says that the same evidence which established that plaintiff did not allow Johnson grass to go to seed upon the twenty acres also established that he did not allow it to seed upon the remainder of the tract. The jury having accepted plaintiff's testimony as to the twenty acres, it necessarily followed that identically the same evidence would have called for a finding by the jury that the same was not permitted to go to seed upon any portion of the remainder of the tract.

We are inclined to agree with defendant in error; especially so since, as he says, there is no affirmative error in the charge complained of; and as no special charge was requested upon this subject, we do not think that plaintiff in error is in any attitude to complain of the supposed error.

Nor do we think there was error, as complained of in the twelfth and thirteenth assignments, in the trial court's permitting plaintiff's counsel to read, in the presence of the jury, extracts from certain court decisions, and in failing to retire the jury at the request of defendant's counsel during such readings. These matters are wholly within the discretion of the trial court; and where, as in this case, there is no abuse of this discretion shown, no error can be predicated thereon. See Western U. Tel. Co. v. Wingate, 6 Texas Civ. App., 394, 25 S. W., 439; Gulf, C. & S. F. Ry. Co. v. Dunlap, 26 S. W., 655; Missouri, K. & T. Ry. v. Smith, 101 S. W. 453.

The remaining assignments complain chiefly of the insufficiency of the evidence to support the judgment; and, while it is true, the evidence was conflicting, yet it is ample, in our opinion, to support the verdict. We therefore overrule these assignments. And, since we find no error in the proceedings of the trial court, its judgment is in all things affirmed.

*Affirmed.*

Writ of error refused.